UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00141-MOC-DSC

| | | |
|---|---|---|
| **DUKE ENERGY FLORIDA, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **WESTINGHOUSE ELECTRIC COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the following motions: (1) plaintiff's Motion to Enjoin Defendant from Prosecuting Later-Filed Action (#11); and (2) defendant's Motion to Dismiss or Transfer (#23). After both motions were briefed, oral arguments were heard on June 4, 2014. Having fully considered the briefs and arguments of respective counsel, the court will deny both motions and instruct defendant to answer or otherwise respond to the Complaint within 14 days.

### FINDINGS and CONCLUSIONS

I. Background

A. Nature of the Relationship Between the Parties

Starting in 2006, Duke entered into negotiations with Westinghouse to execute the design, procurement, and construction of the Levy County Nuclear Plant in Levy County, Florida. For purposes of the instant motions, it is undisputed that a number of those meetings occurred in North Carolina and, in particular, within the Western District of North Carolina. Discussions also took place in Massachusetts, Pennsylvania, and Florida. The court has also

1

accepted Westinghouse's assertion that a great deal of the work it undertook for Duke was performed in the Western District of Pennsylvania.

In 2008, the parties executed the "Engineering, Procurement and Construction Agreement" ("EPC") along with non-party Stone & Webster, Inc. Such agreement not only contemplated Westinghouse's assistance in building the plant, but in providing Duke with support in its attempt to obtain from the Nuclear Regulatory Commission (hereinafter "NRC") a combined construction permit and operating license ("COL"). The agreement also provided that either party could terminate the EPC if the COL was not received by January 1, 2014.

Having not received a COL by January 1, 2014, Duke terminated the EPC on January 28, 2014, and the parties exchanged claims for compensation arising under the agreement and implemented the EPC's provision as to amicable resolution of such claims. By late March 2014, Duke determined that it and Westinghouse had exhausted the dispute resolution provisions of the agreement and filed this action, which seeks damages for breach of the EPC as well as declaratory judgment as to Westinghouse's claims.

The application filed by Duke with the NRC relies on a Westinghouse nuclear plant design known as the AP1000, which is apparently a standard "plan book" design Westinghouse has sold and continues to sell to various power companies.[1] According to the Complaint, Duke paid Westinghouse a total of $56 million in fixed milestone payments for "finalization" of the AP1000 design and $9.45 million as an "investment recovery/royalty" payment related to the standard plant design, as provided in the EPC.

Duke alleges that on April 30, 2009, it exercised its right to partially suspend Westinghouse's performance under the EPC Agreement because of a delay in the projected

---

[1] Inasmuch as defendant is moving to dismiss, the court has accepted as true the well-pled facts asserted in the Complaint for the limited purpose of considering the pending motions.

commercial operation date for the Levy Plant. On March 25, 2010, the parties executed Amendment Number Three to the EPC Agreement ("Amendment 3") to reflect changes necessitated by that suspension of performance. Relevant to the instant motions, Amendment Three also revised Article 27 of the EPC, a clause governing the dispute resolution process.

### B. Choice of Law and Forum Clause

In pertinent part, the EPC provides a forum and choice of law clause, which provide, as follows:

> The validity, construction, and performance of this Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina, without giving effect to the principles thereof relating to conflicts of laws. Any litigation between Contractor (or either Consortium Member) and Owner may be commenced in Federal or State Courts in the State of North Carolina having jurisdiction over the subject matter. Each Party hereby consents to being subject to the personal jurisdiction of such Courts.

Conley Decl. at ¶12.

### C. Nature of Plaintiff's Claims

Based on an alleged breach of contract, Duke seeks herein the remedy of refund of certain advance payments which it contends it paid, but which Westinghouse never earned. According to the Complaint, Duke paid Westinghouse approximately $54 million pursuant to the EPC Agreemeny, which included a payment of $51,778,440 for two turbine generators that were never built and $2,348,660 for reactor vessel parts as to which work was suspended before work started. Duke contends that work was halted on those items by means of a Change Order which was agreed to by the parties.

Duke also seeks a declaratory judgment that it owes Westinghouse nothing under the EPC's provision for "termination costs." The EPC Agreement permits Westinghouse to recover from Duke its "Termination Costs." Apparently, Westinghouse claims more than $482 million

in direct costs and also seeks an "agreement termination fee" of $30 million, which Duke contends is allowed by the EPC if the agreement is terminated for convenience, but not allowed if a COL was not obtained by January 1, 2014.

**D. Timeline of Dispute Resolution and Cross Filings**

In accordance with the EPC as amended, the parties exchanged claims and commenced dispute resolution proceedings immediately before as well as after Duke terminated the agreement. While settlement offers were exchanged, it appears that by March 2014 the parties had made no movement from their positions: Duke believed it was owed a refund and Westinghouse believed it was entitled to its Costs and the Termination Fee.

According to Duke, its counsel was advised by Westinghouse's in-house counsel on March 25, 2014, that there was no need for further meetings as he believed that the parties had fulfilled their pre-litigation, dispute-resolution obligations under Article 27 of the EPC and Amendment Three. The next day, March 26, 2014, Duke's counsel contacted Westinghouse's in-house counsel with questions concerning whether Westinghouse intended to challenge the forum-selection clause and whether it intended to further follow the dispute-resolution procedure. While such email was responded to, Westinghouse did not answer the questions posed. On March 27, 2014, Westinghouse sent Duke an invoice for $512 million.

By 4 p.m. the following day, March 28, 2014, Duke filed this lawsuit in this court. The following Monday, March 31, 2014, Westinghouse filed its own lawsuit in the Western District of Pennsylvania. Westinghouse Electric Company, LLC v. Duke Energy Florida, Inc., Civ. Action No. 2:14-cv-00420-MRH (W.D.Pa. 2014).

## II. Discussion

### A. Motion to Enjoin

Plaintiff has moved to enjoin Westinghouse from prosecuting its second-filed action in the United States Court for the Western District of Pennsylvania. While acknowledging that it is widely accepted that a court in which the first action is filed has the inherent authority to enjoin one party from prosecuting its later-filed action, Learning Network, Inc. v. Discovery Comm'ns, Inc., 11 Fed. Appx. 297, 300-301 (4th Cir. 2001), this court will not lightly exercise its authority in that manner as enjoining a party from taking any action in another forum infringes on its sister court's ability to manage its docket. Indeed, this court firmly believes that if it denies the Motion to Dismiss and/or Transfer, its colleague in Pennsylvania will either dismiss or transfer that action to this court. This motion is, therefore, denied.

### B. Motion to Dismiss or Transfer

The Court of Appeals for the Fourth Circuit adheres to the "first-filed rule," which holds that when similar lawsuits are filed in different districts, "'the first suit should have priority' absent the showing of balance of convenience in favor of the second action." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co. Inc., 386 F.3d 581, 594–95 (4th Cir.2004) (quoting Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n. 2 (4th Cir.1974)). The first-filed rule applies if "the same factual issues" provide the basis for each suit. Allied–Gen. Nuclear Serv's v. Commonwealth Edison Co., 675 F.2d 610, 611 n. 1 (4th Cir.1982). There is no dispute that this was the first action filed and that the actions involve the same parties and ultimately the same issue, to wit, what if anything is due and owing under the EPC to either party.

Generally, two exceptions are recognized to the first-to-file rule: (1) balance of convenience; and (2) special circumstances. Westinghouse contends that the court need not reach the balance of convenience exception as the special circumstances exception merits transfer.

### 1. Special Circumstances Exception

First, Westinghouse contends that this court need not conduct the balancing test as "special circumstances" require that this action be transferred. Specifically, Westinghouse argues that Duke's filing in this district was anticipatory, amounted to forum-shopping, and that it is the natural plaintiff, not Duke. Further, it argues that Duke's breach of contract action is a feint as the parties at all times anticipated that the refund Duke seeks would be an offset to Westinghouse's larger claim. Finally, it argues that special circumstances also exist inasmuch as the decision as to whether to entertain a declaratory judgment action is discretionary.

Of particular note, Westinghouse cites this court to Family Dollar Stores, Inc. v. Overseas Direct Import CO., Ltd., 2011 WL 148264 (W.D.N.C. Jan. 18, 2011), where Judge Voorhees found special circumstances which overcame the first-to-file rule. The court held, as follows:

> Among the special circumstances that would permit a departure from the first-filed rule is the instance where an action was filed in the midst of settlement negotiations. Furthermore, other courts have refused to apply the first-filed rule when the party that files first does so with notice that the other party is about to file suit.
> The Eighth Circuit has identified two factors where special circumstances for deviating from the first-filed rule may exist. First, when the first-filed action is for declaratory judgment, a closer look is warranted because "such an action may be indicative of a preemptive strike than a suit for damages or equitable relief Second, a red flag is raised when the party that filed first was on notice that a lawsuit was imminent. Both of the red flags identified by the Eighth Circuit are present in this case.

Id. at 3-4 (citations omitted).

The "decision to invoke the first filed rule is an equitable determination that is made on a case by case basis." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 360 (W.D.N.C.2003). It also follows that whether to apply the special-circumstances exception is also discretionary and depends on all the circumstances surrounding the first filing. While this action contains a declaratory judgment claim and it is clear that Duke anticipated that Westinghouse was getting ready to file its own suit, the facts leading up to the filing of this action are distinctly different than those in Family Dollar. Here,

(1) Duke was under the well-founded impression that dispute resolution had ended based on a representation from Westinghouse;

(2) the contract had a forum and choice of law provision in which the parties agreed that North Carolina law would apply and that disputes could be resolved in the courts of North Carolina; and

(3) when Duke sought assurances that Westinghouse would honor that provision, it received no answer, but instead was given an invoice for over half-a-billion dollars.

Further, the court finds Duke's breach of contract claim to be no feint, but a real claim for refund of substantial sums that it contends Westinghouse never earned.

Where, as here, a party files an action in a forum in which the parties agreed disputes could be resolved, the special circumstances exception to the first-to-file rule is not applicable. Indeed, the fact that this action may well be an anticipatory filing is diminished by Westinghouse's failure to assure Duke that it would honor the forum selection clause of the contract. Further, the declaratory judgment claim is a real claim inasmuch as the moment Westinghouse delivered its invoice, Duke's balance sheet necessarily reflected an enormous account payable which, more-than-likely, had impact on even *its* bottom line. While the

7

declaratory judgment claim may well never be reached when Westinghouse counterclaims or these actions are consolidated, Duke had every right to dispute that invoice by seeking a declaratory judgment in this court. The court will, therefore, decline to apply the exception because the Western District of North Carolina is, as more fully discussed below, the appropriate forum for this litigation.

### 2. Balance of Convenience Exception

Westinghouse next contends that this action should be transferred in accordance with 28, United States Code, Section 1404(a) to the Western District of Pennsylvania, where it could have been brought originally and where it has filed its own action. Section 1404(a) provides, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In deciding a motion to transfer venue under Section 1404(a), courts must "weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). These factors include, but are not limited to, the following: (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with

conflicts of laws. See Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93 (W.D.N.C.1990); CapitalSource Finance LLC v. B & B Contractors, Inc., 2005 WL 1025953 (D.Md.2005).

In order to determine whether transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir.1984), plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden and the burden is heavy. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C.1989). The court will review the Jim Crockett Production factors *seriatim*.

### a. The Plaintiff's Choice of Forum

While Duke argues the first to file rule mandates giving such choice great weight, Westinghouse argues that the anticipatory filing exception dictates an opposite result. "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 360 (W.D.N.C.2003). Inasmuch as application of the first to file rule is equitable, id., application of the anticipatory filing exception must also be equitable. While this court does not condone anticipatory filing in an attempt to gain a home-court advantage,[2] it would be inequitable to penalize Duke for filing an action in the very forum the parties agreed was an appropriate forum to resolve their disputes. While Westinghouse attempts to color its actions immediately before the filing as somehow seeking to continue with dispute resolution, its failure to assure Duke that it would abide by the forum selection clause plus sending Duke its weighty invoice provided Duke with notice that not only were the kid gloves off, it was likely that Westinghouse was not

---

[2] The court firmly believes that there is no home-court advantage for either party in the federal court system and that the playing field would be level here or in the Western District of Pennsylvania.

going to honor the forum selection clause. The first factor weighs heavily in favor of keeping this action in this district.

### b. Relative Ease of Access to Sources of Proof

The court agrees with Westinghouse that much of the work it performed was in Pennsylvania and to the extent such work is questioned, evidence and witnesses will be found in Pennsylvania. Offsetting such analysis is the fact that most, if not all of the documents should be easily accessible by both parties electronically. This factor somewhat favors transfer.

### c. Availability of Compulsory Process for Attendance of Unwilling Witnesses, and the Cost of Obtaining Attendance of Willing and Unwilling Witnesses

Again, the court agrees with Westinghouse that most of the witnesses concerning what work was performed are located in Pennsylvania. No forecast is made as to such witnesses being unwilling to travel to the Western District of North Carolina. It is apparent that the costs of obtaining the testimony of most witnesses would be less if this action were in Pennsylvania. This factor somewhat favors transfer.

### d. Possibility of a View of the Premises, if Appropriate

While this court is aware that the proposed plant was to be built in Florida and much of the planning and building of components was to be accomplished in Pennsylvania and elsewhere, a jury view of those facilities is unnecessary to resolution of this dispute. If any views were required, such could be easily accomplished through production of photographs. This factor is neutral.

### e. Enforceability of a Judgment

This factor is also neutral inasmuch as a judgment obtained in a federal court in Pennsylvania is—as is a judgment obtained in this court—enforceable nationwide. This factor is neutral.

### f. Relative Advantage and Obstacles to a Fair Trial

As noted above, this factor is neutral in that a fair trial can be obtained in any federal court for either side.

### g. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

There appear to be no other practical problems outside of the factors previously considered that make trial any easier here than in Pennsylvania. This factor is neutral.

### h. Administrative Difficulties of Court Congestion

While defendant has pointed to the Article III judges in the Western District of Pennsylvania having half the civil case load of judges in this district, the docket of the undersigned is completely current. This factor is neutral.

### i. Local Interest in Having Localized Controversies Settled at Home

The interest in having this dispute, and any counterclaims, resolved in this district is counterbalanced by nearly identical interests in the Western District of Pennsylvania. The dispute that has arisen cannot be localized to either Pennsylvania or North Carolina, as it impacts the bottom line of businesses in both jurisdictions. This factor is neutral.

### j. Appropriateness in Having a Trial of a Diversity Case in a Forum that is at Home with the State Law that Must Govern the Action

While Westinghouse concedes that North Carolina law governs this breach of contract action, it contends that North Carolina contract law in not unique and could easily be applied in Pennsylvania. While the court agrees that there is little if any difference in law, it is "appropriate" to have this action tried in this forum as it is "at home" with the law the parties agreed to apply in interpreting their contract. This factor favors retention.

      **k.**      **Avoidance of Unnecessary Problems with Conflicts of Laws**

No problems have been identified, making such factor neutral.

      ***

Having considered all factors both quantitatively and qualitatively, the court finds that two factors favor retention and two factors favor transfer. Quantitatively, it is a tie. Qualitatively, however, plaintiff's choice of forum must be given greater weight than the ease of access to proof and costs saving that may be realized through prosecuting this action in Pennsylvania . The motion to transfer will, therefore, be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) plaintiff's Motion to Enjoin Defendant from Prosecuting Later-Filed Action (#11) is **DENIED**;

(2) Dismiss or Transfer (#23) is **DENIED;**

(3) defendant is instructed to Answer or otherwise Respond to the Complaint within 14 days; and

(4) the Clerk of this Court is instructed to transmit a courtesy copy of this Order to the presiding judge in <u>Westinghouse Electric Company, LLC v. Duke Energy</u>

<u>Florida, Inc.</u>, Civ. Action No. 2:14-cv-00420-MRH, in the United States District Court for the Western District of Pennsylvania.

Signed: June 9, 2014

Max O. Cogburn Jr.
United States District Judge